IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 06 C 3640 |
| ) | |
| CHICAGO TRANSIT AUTHORITY, ) | Suzanne B. Conlon, Judge |
| PHILLIP CARMICHAEL, and ) | |
| EARL MARSHALL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Cynthia Berry sues her employer, the Chicago Transit Authority ("the CTA"), and two co-workers, Phillip Carmichael and Earl Marshall, alleging sex discrimination and hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), battery (Count II), and intentional infliction of emotional distress (Count III). Berry settled Counts II and III against Carmichael and Marshall. Dkt. No. 60 (March 20, 2007). The CTA moves for summary judgment on Count I. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Berry began employment with the CTA in July 2002. Def.'s Facts at ¶ 5. She is a carpenter in the bus overhaul section. *Id.* Carmichael and Marshall also work in the bus overhaul section, along with approximately fifty other employees. *Id.* at ¶¶ 6, 8-9. Berry is the only woman carpenter; there is one other woman in the section. *Id.* at ¶¶ 9-10.

During breaks, Berry often played cards with Carmichael, Marshall and other employees.

Def.'s Facts at ¶¶ 12, 29. Before the incident prompting this litigation, Berry had known Carmichael for three and one-half years. *Id.* at ¶ 14. She ate lunch with him twice a week and spent her break times with him approximately four times a week. *Id.* She had known Marshall for two and one-half years. *Id.* at ¶¶ 20. She socialized with Carmichael, Marshall and other CTA employees outside of work. *Id.* at ¶ 18, 21.

On January 17 or 18, 2006, Berry went to the break area to play cards during her morning break. Def.'s Facts at ¶ 13. Marshall was sitting at a picnic table with two other employees, John Hill and Raymond Hardy. *Id.* at ¶ 22. Marshall wanted to play a four-person game called "bid whist" with Hill and Hardy, and he wanted Carmichael to be his partner. *Id.* at ¶¶ 22, 24. Berry sat down to play. *Id.* Marshall ordered her to get up from the table; she refused and became upset. *Id.* at ¶ 24. Marshall suggested that he, Hill, Hardy, and Carmichael move to the other end of the table, away from Berry. *Id.* at ¶¶ 22, 24.

Carmichael rubbed his back against Berry's shoulder, and she told him to stop and cursed him. Pl.'s Facts at ¶ 86. He then came up behind her and grabbed her by her breasts. *Id.* at ¶ 88. He lifted her body and rubbed it against his lower torso. *Id.* at ¶ 89. She began swinging at him and he pushed her into a fence. *Id.* at ¶¶ 90-91. Supervisor Michael Gorman (whose office door is near the break area) heard noises, opened his door and looked towards the break area. Def.'s Facts at ¶¶ 27-28. He saw Berry and other employees dispersing. *Id.* at ¶¶ 31-32.

After the incident, Berry was upset and kept to herself. Pl.'s Facts at ¶¶ 93-94. She did not want to speak to any male, and she lay down in a bus for the rest of her shift. *Id.* at ¶¶ 95-96. The next day, Berry told Gorman she had been sexually harassed in the break area. Def.'s Facts at ¶ 33. Berry claims Gorman responded by telling her that she was "a pain in the butt," that "women were

not the only ones who could file sexual harassment charges," and that she could lose her job if she continued to file charges against Carmichael. Pl.'s Resp. to Def.'s Facts at ¶ 34. Gorman contacted Thelma Crigler, a CTA equal employment opportunity investigator, notified her of the incident and asked her to investigate. *Id.* at ¶¶ 34-36. At Crigler's request, Gorman collected written statements from Berry, Carmichael, Marshall, Hill and Hardy. *Id.* at ¶¶ 37-40.

Berry called the police to arrest Carmichael. Def.'s Facts at ¶ 43. Upon their arrival, the police informed Gorman they were there to investigate the incident involving Berry and Carmichael. *Id.* Berry claims Gorman sabotaged both the equal employment opportunity and police investigations. Pl.'s Resp. to Def.'s Facts at ¶ 41. She states the defendants submitted false police reports and Gorman manipulated the investigations to portray her as the aggressor and ensure that Carmichael and Marshall were not held accountable. *Id.* The police investigation determined that Berry was the aggressor and Carmichael the victim. Def.'s Facts at ¶ 44. Gorman informed Crigler of the police investigation. *Id.* at ¶ 45.

Crigler reviewed the written statements collected by Gorman. Def.'s Facts at ¶ 60. She interviewed Berry, Carmichael, Hill and Hardy, and conducted a physical inspection of the break area. *Id.* at ¶¶ 59-60, 66. Crigler concluded that there was no evidence Berry was sexually harassed. *Id.* at ¶¶ 64, 67. She rejected Berry's account of the incident, concluding that Berry was the aggressor because she sat between Carmichael's legs, and he picked her up and removed her. *Id.* at ¶ 65.

Berry, Carmichael and Marshall were not disciplined as a result of the incident. Def.'s Facts at ¶ 46. Gorman advised Berry to stay away from the break table area, and advised Carmichael to stay away from Berry, pending Crigler's investigation. *Id.* at ¶ 47. Gorman did not refer to Berry's

3

gender when he spoke to her about staying away from the break table area. *Id.* at ¶ 51. Berry disagreed with his advice, believing that she should be able to go to the break area. *Id.* at ¶ 73.

Berry has been on short term disability leave from the CTA since January 24, 2006 due to injuries sustained in the incident. Def.'s Facts at ¶ 7; Pl.'s Facts at ¶ 85. During this time, the CTA paid $408.09 to medical providers for Berry's injuries, and paid Berry $5200.00 in disability pay. Def.'s Reply to Pl.'s Facts at ¶ 85. Berry sought to be placed on injured on duty status due to the incident. Pl.'s Facts at ¶ 97. She claims Gorman refused to do so. *Id.* at ¶ 104. The CTA disputes this statement, arguing that Berry's deposition testimony regarding Gorman's statements is inadmissible hearsay, and that Gorman testified he filled out the appropriate forms but had no authority to decide her claim. Def.'s Reply to Pl.'s Facts at ¶¶ 98-104. Berry also claims she was denied worker's compensation. Pl.'s Facts at ¶ 102. The CTA submitted an affidavit from Patrick Durkin, chief attorney in the CTA's workers compensation section, averring that Berry's workers' compensation claim is open and pending before the Illinois Workers' Compensation Commission. Def.'s Reply to Pl.'s Facts at ¶ 102.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The CTA has the initial burden of demonstrating it is entitled to summary judgment. *Continental Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th

4

Cir. 2005). If the CTA meets its burden, Berry must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Id.*; FED. R. CIV. P. 56(e). The court must evaluate the evidence in the light most favorable to Berry, and may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. To survive a motion for summary judgment, she must do more than merely allege the existence of a factual dispute; she must offer evidence sufficient to support a verdict in her favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

## II.    Sex Discrimination

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's sex. 42 U.S.C. § 2000e-2(a). To prove a case of discrimination under Title VII, Berry must offer either direct or circumstantial evidence ("the direct method"), or indirect evidence that satisfies the burden-shifting test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("the indirect method").[1] Whether Berry proceeds by the direct or indirect method of proof, she must show a materially adverse employment action. *Phelan v. Cook County*, 463 F.3d 773, 780 (7th Cir. 2006). A materially adverse employment action includes diminution of an employee's compensation, benefits, or other financial terms of employment. *Id.*

Berry argues she suffered an adverse employment action when she was denied workers' compensation. *See* Pl.'s Facts at ¶ 102; Pl.'s Resp. at 12. This argument is unsupported by the record. She cites her deposition transcript in support of her statement, but the cited page contains no reference to her workers' compensation claim. Pl.'s Facts at ¶ 102. Berry testified that a third

---

[1] Berry appears to proceed under the direct method of proof, because she concedes that she cannot identify similarly situated male employees who were subjected to the same conduct and received better treatment. Pl.'s Resp. to Def.'s Facts at ¶ 75.

5

person, Al Graves, told her that Gorman told him to place Berry on sick leave. *Id.* Al Graves' statement to Berry does not support her claim that she was denied workers' compensation, and is double hearsay. FED. R. EVID. 801(c). The statement is disregarded. Local Rule 56.1(b)(3)(C); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (upholding district court's enforcement of Rule 56.1). The CTA submitted evidence that Berry's workers' compensation claim is pending before the Illinois Workers' Compensation Commission. Def.'s Reply to Pl.'s Facts at ¶ 102, Ex. J. Berry cannot establish she suffered an adverse employment action based on denial of her workers' compensation claim because her claim is still pending.

Berry was not terminated, transferred or demoted. She was not disciplined as a result of the incident. Gorman advised her to stay away from the break area pending the investigation of the incident, and she was unhappy with this directive. However, her dissatisfaction does not make Gorman's directive a materially adverse employment action *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) ("not every change that makes an employee unhappy is actionable"). Berry fails to set forth facts showing there is a genuine issue for trial regarding whether she suffered an adverse employment action. Consequently, summary judgment must be granted on her sex discrimination claim.

### III. Hostile Work Environment Sexual Harassment

Title VII's prohibition against sex discrimination protects employees against unwelcome sexual advances that create an offensive or hostile work environment. 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). A hostile work environment occurs when sexual harassment is so severe or pervasive it alters the conditions of employment and creates an abusive work environment. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1143 (7th Cir. 1997).

In determining whether a hostile work environment was created, the totality of the circumstances must be taken into account. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The court must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors are evaluated from both an objective and subjective point of view. *Id.* at 21-22.

To survive summary judgment, Berry must show that she was harassed based on sex, and the harassment was so severe or pervasive it altered the terms or conditions of her employment relationship. *Smith v. Sheahan*, 189 F.3d 529, 532-33 (7th Cir. 1999). She must also show the harassment provides a basis for the CTA's liability. *Id.* If at least one of Berry's harassers was her supervisor, the CTA will be strictly liable. *Phelan*, 463 F.3d at 783. If she was harassed by a co-worker, the CTA is liable only if Berry introduces competent evidence the CTA was negligent either in discovering or remedying the harassment. *Id.* at 785.

### A. Hostile Environment

Berry argues she was subjected to a hostile work environment when she suffered an assault at the hands of a co-worker. Isolated incidents generally do not support a finding of sexual harassment. *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 706 (7th Cir. 1995). However, one egregious act of harassment may be sufficiently severe to establish a hostile environment. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). Instances of physical contact have the potential to be "among the most severe and psychologically damaging types of sexual harassment." *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006). Direct contact with an intimate body part "constitutes one of the most severe forms of sexual harassment." *Worth v. Tyer*, 276 F.3d 249,

268 (7th Cir. 2001) (touching employee's breast for several seconds constituted a hostile environment).

Viewed in Berry's favor, the facts of the incident are sufficient to establish a hostile environment. Carmichael grabbed her by her breasts, lifted her body and rubbed her against his lower torso before pushing her into a fence. Pl.'s Facts at ¶¶ 88-90. This was an incident of physical contact that involved direct contact with an intimate body part. Carmichael's actions were sexual. The fact that Berry tried to break free and swing at Carmichael indicates she was subjectively threatened. *Id.* at ¶¶ 89-90. She was also humiliated. She spent the rest of the day in disbelief that she had been attacked while the other men sat and watched. *Id.* at ¶ 94. The incident was objectively severe. A reasonable person would find their environment hostile or abusive if they were subjected to such physical sexual contact in front of their co-workers. The incident interfered with Berry's work performance. For the rest of the day, she did not want to speak to any male and isolated herself by lying down in a bus. *Id.* at ¶ 95. The severity of the incident, considering the totality of the circumstances, is sufficient to establish a hostile work environment. *See Hostetler*, 218 F.3d at 809 (isolated incidents of physical, intimate and forcible harassment sufficient to establish a hostile work environment).

Berry argues that Gorman's actions to protect her harassers also constituted harassment and created a hostile work environment. She fails to present sufficient evidence for this argument. Viewed in her favor, the facts do not support a reasonable inference Gorman harassed her *based on sex*. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'"). Gorman did not refer to her sex when he advised her to stay away from the break area.

8

Berry claims (supported only by her answers to the CTA's interrogatories) Gorman told her that "women were not the only ones who could file sexual harassment charges" and threatened that she could lose her job if she complained. Pl.'s Resp. to Def.'s Facts at ¶ 34. A reasonable jury could not infer from this unsupported statement that Gorman treated Berry differently than male employees. Nor could a jury reasonably infer that these comments established a hostile work environment. Berry fails to raise a triable factual issue that Gorman sexually harassed her.

### B. CTA's Liability

Berry cannot establish she was harassed by a supervisor. Therefore, to prevail she must demonstrate that the CTA knew or should have known of her harassment and failed to take prompt and appropriate remedial action. *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990). The CTA's legal duty "will be discharged if it takes reasonable steps to discover and rectify" the sexually harassing acts of its employees. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Whether the CTA's actions were reasonable depends on the seriousness of the harassment. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995).

The CTA argues it was not negligent in responding to Berry's harassment claims. There is no evidence Gorman knew or should have known about the harassment prior to the time that Berry reported it to him. It is undisputed Gorman did not see the incident. When Berry reported it to him the next day, he contacted Crigler and asked her to investigate. He assisted Crigler in her investigation by obtaining written statements from Berry, Carmichael, Marshall, Hill and Hardy. He advised Berry to stay away from the break area during the investigation and advised Carmichael not to come in contact with Berry to avoid tension in the workplace.

Berry argues that Gorman's directive to stay away from the break area was unfair because

he did not give the same directive to Carmichael. Remedial measures taken by an employer may make a victim worse off, such as those that make her job "demonstrably and significantly less rewarding or desirable." *Hostetler*, 218 F.3d at 811-12. Such measures are ineffective *per se* and an inadequate discharge of the employer's duty of correction. *Id.* Gorman's advice does not rise to this level. His advice to stay away from the break area was not disciplinary. It was a temporary condition that did not affect her job duties or compensation.

Berry argues Gorman took steps to sabotage Crigler's investigation and the police investigation, and to ensure that no male employees were punished. Pl. Resp. at 10. She submits no evidence to support this argument other than her own testimony. Berry's uncorroborated testimony is insufficient to defeat a motion for summary judgment. *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 446 (1997). The incident was serious. The CTA, acting through Gorman and Crigler, took prompt and reasonable steps to discover and rectify acts of sexual harassment by its employees. *Baskerville*, 50 F.3d at 432. Accordingly, there is no basis for the CTA's liability.

## IV. Retaliation

Berry argues she was retaliated against for reporting the incident of harassment because Gorman threatened that she could lose her job if she filed charges, and he sabotaged investigation of the incident. The CTA argues Berry's retaliation arguments should be disregarded because she did not allege retaliation in her complaint. Even if Berry had alleged retaliation, summary judgment is appropriate because the only evidence of retaliation is her own uncorroborated testimony. *Cowan*, 123 F.3d at 446.

## CONCLUSION

The CTA's summary judgment motion is granted.

ENTER:

May 3, 2007

Suzanne B. Conlon
United States District Judge